UNITED STATES DISTRICT COURT                          NOT FOR PUBLICATION
EASTERN DISTRICT OF NEW YORK

---

EON STRUTHERS,

                                              Plaintiff,                    MEMORANDUM
                                                                           AND ORDER
                          - versus -                                       12-CV-242

THE CITY OF NEW YORK, POLICE OFFICER
SKYE MORALES (Shield # 18414), POLICE
OFFICER VOLKAN SARMAN (Shield # 31541),
POLICE OFFICERS JOHN DOE 1-3,

                                              Defendants.

---

APPEARANCES:

         LAW OFFICES OF WALE MOSAKU, P.C.
                  25 Bond Street, 3rd Floor
                  Brooklyn, New York  11201
         By:    Wale Mosaku
                *Attorney for Plaintiff*

         MICHAEL A. CARDOZO
         Corporation Counsel of the City of New York
                  100 Church Street
                  New York, New York  10007
         By:    Patrick Beath
                *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

         Eon Struthers brings this action against the City of New York (the "City") and

several named and unnamed New York Police Department ("NYPD") officers (collectively,

"defendants").  Struthers asserts claims pursuant to 42 U.S.C. § 1983 and New York state law for

false arrest/false imprisonment, malicious prosecution, excessive force, and unlawful search.

Struthers further asserts federal claims for failure to intervene, denial of the right to fair trial, and

municipal liability, as well as state claims for assault, battery, and negligence.  Defendants have

moved for summary judgment.  For the reasons set forth below, the motion is granted in part and denied in part.

BACKGROUND

A.    *Factual Background*

The claims asserted in Struthers's complaint stem from an arrest that occurred on April 30, 2011.  The following facts are taken from Local Rule 56.1 statements, affidavits, deposition excerpts, and other documentary evidence submitted by the parties.  Unless otherwise noted, the facts set forth below are uncontroverted.

1.    *The April 30, 2011 Assault on Carlos Fernandez*

On April 30, 2011, at approximately 9:20 PM, Carlos Fernandez got off the Staten Island Ferry in Staten Island and boarded the S-74 bus.  Beath Decl. Ex. A, at 8:16-18 (Fernandez Dep.).  About ten minutes into the bus ride, as a group of individuals were getting off the bus, two of them spit on Fernandez, and several punched him in the face.  *Id*. at 9:4-7, 10:2-13.  One of the individuals who spit on Fernandez was wearing a red shirt.  *Id*. at 27:21-28:7.  Following the attack, Fernandez asked the bus driver to call 911; the driver complied.  *Id*. at 10:14-16.  A dispatcher put out a message over the police radio, alerting officers to an assault in progress at Pleasant Valley Avenue and Van Duzer Street.  Mosaku Decl. Ex. 6 (NYPD Radio SPRINT Report); Beath Decl. Ex. B, at 9:11-10:2, 13:7-12 (Morales Dep.); Beath Decl. Ex. C, at 17:21-18:4 (Sarman Dep.).

Two officers responded to the radio call and arrived at the scene shortly thereafter.  Beath Decl. Ex. A, at 11:17-22, 12:13-15 (Fernandez Dep.).  The parties dispute the identity of these two responding officers.  Defendants assert that Skye Morales and Volkan Sarman responded to the radio call and were the first officers to arrive at the scene at

2

approximately 9:25 PM.  Beath Decl. Ex. B, at 13:7-23, 17:16-24 (Morales Dep.); Beath Decl.

Ex. C, at 16:8-12, 17:21-18-4, 18:25-19:7, 19:17-23, 24:2-16 (Sarman Dep.).  Struthers disputes

this fact on the basis of two pieces of conflicting evidence.  First, Morales and Sarman both

testified that they were driving an unmarked silver Chevrolet Impala on the evening of April 30,

2011, Beath Decl. Ex. B, at 17:25-18:10, 23:9-18 (Morales Dep.); Beath Decl. Ex. C, at 16:18-24

(Sarman Dep.), whereas Fernandez testified that the first responding officers to the scene were

driving an unmarked blue Impala, Beath Decl. Ex. A, at 12:2-5, 12:16-23 (Fernandez Dep.).

Second, Morales and Sarman both testified that they were wearing uniforms on the evening of

April 30, 2011, Mosaku Decl. Ex. 5, at 18:21-19:2 (Morales Dep.); Mosaku Decl., Ex. 4, at

15:20-16:17 (Sarman Dep.), whereas Fernandez testified that the first responding officers to the

scene were in plainclothes, not uniform, Mosaku Decl., Ex. 1, at 12:6-15, 13:5-8 (Fernandez

Dep.).

> ## 2. *The April 30, 2011 Arrest of Struthers*

The parties dispute the narrative of events following the arrival of the responding

officers at the scene.  According to defendants, once at the scene, Morales spoke with Fernandez

about the incident.  Beath Decl. Ex. B, at 21:4-16 (Morales Dep.).  Morales asked Fernandez if

he would be able to recognize the individuals who assaulted him; Fernandez responded in the

affirmative.  *Id*. at 21:19:22-2.  Morales then asked Fernandez to ride in their vehicle with them

to canvass the area for the individuals who had assaulted him.[1]  *Id*. at 22:23-23:8.

Defendants further assert that as Morales and Sarman drove towards the

intersection of Vanderbilt Avenue and Targee Street, Fernandez identified several black males as

the ones who had attacked him on the bus; they included the individual who was wearing a red

---

[1]      On the basis of the conflicting evidence noted above, Struthers disputes that Morales was the
responding officer Fernandez spoke with at the scene and the officer who asked Fernandez canvass the area.
Struthers Rule 56.1 Statement ¶¶ 5-6.

shirt.[2]  Beath Decl. Ex. A, at 14:8-15:8, 15:23-16:2, 26:19-27:3, 27:19-28:10 (Fernandez Dep.);

Beath Decl. Ex. B, at 23:22-26:10, 26:24-27:8 (Morales Dep.); Beath Decl. Ex. C, at 44:10-45:18

(Sarman Dep.).  Sarman, who was sitting in the front passenger seat, called out to the males and

asked them to stop.[3]  Beath Decl. Ex. B, at 27:15-29:2 (Morales Dep.); Beath Decl. Ex. C, at

45:10-46:3 (Sarman Dep.). The males began running away from the officers' vehicle.[4]  Beath

Decl. Ex. B, 29:19-25 (Morales Dep.); Beath Decl. Ex. C, at 46:11-15 (Sarman Dep.).

According to defendants, Sarman exited his vehicle and pursued and apprehended

one of the fleeing individuals, who was later identified as Struthers.[5]  Beath Decl. Ex. B, at

31:22-33:17 (Morales Dep.); Beath Decl. Ex. C, at 46:11-48:23, 50:15-52:14 (Sarman Dep.).

Sarman apprehended Struthers by bringing him to the ground and then placing handcuffs on

him.[6]  Beath Decl. Ex. B, at 40:5-41:9 (Morales Dep.); Beath Decl. Ex. C, at 52:10-19, 52:24-

53:22 (Sarman Dep.).  Struthers was wearing a red hoody on the evening of April 30, 2011.

Beath Decl. Ex. E, at 55:23-56:8 (Struthers Dep.).  After handcuffing Struthers, Sarman left him

in the custody of uniformed officers who had arrived to assist, while he went in search of the

other perpetrators.  Beath Decl. Ex. C, at 58:20-59:25 (Sarman Dep.).  Morales went to canvass

---

[2]    Fernandez testified that he identified three males, Beath Decl. Ex. A, at 15:2-6, 15:23-16:2, 26:25-
27:3 (Fernandez Dep.); Morales testified that Fernandez pointed out approximately four males, Beath Decl. Ex. B, at
26:3-6, 27:6-8 (Morales Dep.); Sarman testified that Fernandez pointed out approximately four or five males, Beath
Decl. Ex. C, at 45:3-23 (Sarman Dep.).

[3]    Again, on the basis of the conflicting evidence noted above, Struthers disputes that Fernandez
identified the males who attacked him to Morales and Sarman, and that Sarman was the officer who called out to the
males to stop.  Struthers Rule 56.1 Statement ¶¶ 7-8.

[4]    Morales testified that the males ran in different directions from the vehicle, Beath Decl. Ex. B, at
29:19-25 (Morales Dep.); Sarman testified that the males initially ran in the same direction and then broke off in
different directions, Beath Decl. Ex. C, at 46:11-48:7 (Sarman Dep.).

[5]    Morales testified that Sarman immediately exited his vehicle and began pursuing Struthers, Beath
Decl. Ex. B, at 31:24-32:2, 33:10-15 (Morales Dep.); Sarman testified that he and Morales initially pursued the
fleeing individuals by car and that he later exited the vehicle, Beath Decl. Ex. C, at 46:11-48:23 (Sarman Dep.).

[6]    Morales testified that Struthers tripped and fell and that Sarman did not bring him to the ground.
Mosaku Decl. 5, at 39:12-40:4 (Morales Dep.).  Morales also testified that he and Sarman together arrested
Struthers, by placing the handcuffs on him, Beath Decl. B, at 40:5-41:7 (Morales Dep.); Sarman testified that he
alone arrested Struthers, by placing the handcuffs on him, Beath Decl. Ex. C, at 52:24-53:22 (Sarman Dep.).

for the other perpetrators in his vehicle with Fernandez.  Beath Decl. Ex. B, at 42:14-43:11

(Morales Dep.).

           Struthers contends that a different series of events unfolded after the responding

officers arrived at the scene of the assault.  The responding officers asked Fernandez to ride in

their vehicle with them to canvass the area for the individuals who had assaulted him.  Mosaku

Decl. Ex. 1, at 13:5-13 (Fernandez Dep.).  As the officers drove towards the intersection of Van

Duzer Street and Targee Street, Fernandez identified three black males who had attacked him on

the bus.[7]  *Id*. at 15:2-16:2, 26:12-27:3.  The officers stopped their vehicle in front of the three

males, got out of their vehicles, and said, "Don't move," with their guns out.[8]  *Id*. at 16:12-20.

The males stopped and the officers handcuffed them.  *Id*. at 17:3-7, 29:15-30:8.  The officers did

not chase the three males or take any of them to the ground.  *Id*. at 29:10-14, 30:15-17.  At some

point, a marked police vehicle with uniformed officers arrived at the scene.  *Id*. at 17:11-20,

18:7-13.  The three males were placed inside that vehicle, which then left the scene.  *Id*. at 17:21-

18:6, 18:21-19:6.  Fernandez then headed to the precinct with Morales and Sarman; on the way,

he observed an individual up against another police car.  Mosaku Decl. Ex. 1, at 30:23-31:11

(Fernandez Dep.).  Fernandez identified that individual to Morales and Sarman as another of his

assailants.  *Id*. at 33:18-20, 34:7-10.

           Struthers further asserts that on the evening of April 30, 2011, he was walking

home alone from a deli when he observed police officers in an unmarked vehicle cruising

alongside him.  Mosaku Decl. Ex. 2, at 74:13-76:3 (Struthers Dep.).  The vehicle was a "light

goldish" or "beige" color.  *Id*. at 78:15-17.  There were three uniformed officers in the car.  *Id*. at

---

[7]     Fernandez later testified that one of the streets at the intersection was Vanderbilt Avenue.  Mosaku
Decl. Ex. 1, at 29:21-23 (Fernandez Dep.).

[8]     Fernandez later clarified that only the officer driving the vehicle drew his gun.  Mosaku Decl. Ex.
1, at 30:9-14 (Fernandez Dep.).

78:10-13, 79:15-80:3.  One of the officers tried to get Struthers's attention but Struthers did not

respond and continued walking.  *Id*. at 79:15-23, 80:4-81:1.  The car stopped in front of

Struthers, cutting of his path, and two of the officers exited the vehicle.  *Id*. at 81:20-82:2.  The

officers who exited had been sitting in the front passenger's seat and the back seat of the vehicle.

*Id*. at 83:11-21.  One of the officers grabbed Struthers and put his hands behind his back, while

the other took him down by the waist.  *Id*. at 84:12-24, 87:14-89:4.  Struthers was handcuffed

while on the ground.  *Id*. at 93:6-12.  Struthers was not injured at this time.  *Id*. at 94:6-12.

Struthers was brought back to his feet and the officers began searching the

pockets of his jeans and hoody.  *Id*. at 94:13-23.  Struthers was then taken to the ground again by

one of the officers and searched further.  *Id*. at 94:21-25, 96:25-97:1, 98:10-99:8, 99:17-100:1,

100:16-101:6.  His right hip and knees made contact with the ground.  *Id*. at 101:16-23.  As a

result, Struthers suffered scrapes to his knees and a "bad injury" to his hip.  *Id*. at 101:25-102:13.

While Struthers was on the ground, one of the officers placed his knee into Struthers's back and

pushed his head down.  *Id*. at 102:2-104:1.

Struthers was then placed in the back seat of the police vehicle.  *Id*. at 105:1-19.

While he was in the back seat, Struthers felt his cell phone vibrate in his front hoody pocket.  *Id*.

at 105:23-24, 106:17-19.  Struthers maneuvered his handcuffed hands to the right of his body,

retrieved the phone from his pocket, grasped the phone in his right hand, and answered the call –

using speakerphone – which was from his daughter's mother.  *Id*. at 105:25-106:1, 106:15-21,

114:9-115:1.  While Struthers was on the phone, one of the officers observed Struthers on the

phone.  *Id*. at 106:3-5.  That officer confiscated Struthers's phone; pulled Struthers's arms

around to the left side of his body; twisted Struthers's left hand, wrist and arm; and tightened the

handcuffs.  *Id*. at 106:6-14, 106:21-24, 115:20-116:1, 116:23-118:12, 120:4-12, 121:18-122:15.

6

Struthers informed the officer that the handcuffs were too tight.  *Id.* at 117:13-17, 118:19-21.

Two of the three officers then got back into the car.  *Id.* at 108:11.  Struthers was the only person

in the back seat of the car.  *Id.* at 107:16-18.  Struthers was transported to 55 Bowen Street,

where he was transferred to a marked police vehicle.  *Id.* at 133:10-13.

       3.    *The Strip Search at the 120th Police Precinct*

Struthers was taken to the 120th Police Precinct.  Beath Decl. Ex. B, at 50:4-11

(Morales Dep.).  Struthers was subjected to a strip search at the precinct.[9]  Beath Decl. Ex. E, at

147:22-157:11 (Struthers Dep.).  The officer who subjected Struthers to this strip search was not

one of the officers who arrested Struthers or brought him to the precinct.  *Id.* at 147:11-19,

153:3-6.

       4.    *Struthers's Criminal Case*

On May 1, 2011, Morales swore out a criminal complaint against Struthers and

another individual, based on information provided by Fernandez, charging Struthers with Assault

in the Third Degree and Harassment in the Second Degree.  Beath Decl. Ex. H (Richmond

County Criminal Court Complaint).  Specifically, the complaint alleges that Struthers and his co-

defendant – in concert with two unapprehended individuals – struck Fernandez "numerous times

with closed fists about the . . . head," pushed Fernandez, and spit on Fernandez.[10]  *Id.*  Struthers

was arraigned on these charges on May 1, 2011 and released on his own recognizance.  Beath

---

[9]      Defendants state in their Rule 56.1 Statement that "Plaintiff *claims* that he was subjected to a strip search at the precinct."  Defendants Rule 56.1 ¶ 20 (emphasis added).  Local Civil Rule 56.1 provides: "Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends *there is no genuine issue to be tried*."  Defendants' use of the word "claims" suggests that they believe this fact to be in dispute, and yet, they include it in their Rule 56.1 statement with a citation to admissible evidence.  Struthers does not dispute this fact in his Rule 56.1 Statement.  Accordingly, I deem this fact admitted for purposes of the motion.

[10]     Struthers does not dispute that Morales swore out the criminal complaint, but disputes, based on the conflicting evidence noted above, that Fernandez provided this information to Morales.  Struthers Rule 56.1 ¶ 22.

Decl. Ex. I (Richmond County Criminal Court Case Sheet); Beath Decl. Ex. J ¶ 3 (Silberlight Decl.).

According to defendants, the Richmond County District Attorney's Office attempted to contact Fernandez multiple times between May 1, 2011 and August 11, 2011. *Id.* ¶ 4. Fernandez did not respond to the District Attorney's Office's communications. *Id.* ¶ 5. Struthers disputes that the District Attorney's Office attempted to contact multiple Fernandez multiple times. Struthers Rule 56.1 ¶ 24 (citing Beath Decl. Ex. A, at 23:9-24:5 (Fernandez Dep.)).

The District Attorney's Office moved to dismiss the charges against Struthers.[11] Beath Decl. Ex. J ¶ 6, Ex. 1 (Silberlight Decl.); Beath Decl. Ex. K (Certificate of Disposition). The charges against Struthers were dismissed on August 11, 2011. Beath Decl. Ex. J ¶ 7 (Silberlight Decl.); Beath Decl. Ex. K (Certificate of Disposition).

B.      *Procedural History*

Struthers commenced this action on January 19, 2012. *See* Compl., ECF No. 1. The City and Morales filed their answer on April 10, 2012. *See* Answer, ECF No. 5. On July 20, 2012, Struthers filed an amended complaint. *See* Am. Compl., ECF No. 10. The City and Morales filed an answer to the amended complaint on August 6, 2012, *see* Answer, ECF No. 12; Sarman filed his answer on September 12, 2012, *see* Answer, ECF No. 14. The parties completed discovery on January 29, 2013. Minute Entry, Jan. 29, 2013. Defendants filed their motion for summary judgment on March 29, 2013. I heard oral argument on May 28, 2013.

---

[11]      Struthers disputes that the District Attorney's Office moved to dismiss the charges against Struthers, citing to the transcript of the August 11, 2011 criminal court proceedings. That transcript indicates that after Struthers's attorney stated, "I think time has run on these," the court sought a response from the District Attorney's Office, which stated "Dismissed per uncooperative witness." Mosaku Decl. Ex. 12 (Aug. 11, 2011 Tr.). I fail to see how this evidence suggests a dispute over the fact that the District Attorney's Office moved to dismiss the charges against Struthers. This fact is further supported by the Certificate of Disposition in the case, which indicates that the case was dismissed upon "MOTION OF DA." Beath Decl. Ex. K.

DISCUSSION

A.    *Summary Judgment Standard*

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

B.    *42 U.S.C. § 1983*

42 U.S.C. § 1983 imposes civil liability on any party who, "under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution" of the United States. *K & A Radiologic Technology Services, Inc. v. Commissioner of Department of Health of State of New York*, 189 F.3d 273, 280 (2d Cir. 1999) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).  Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Board of Education of Chester Union Free School District*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  The "core purpose of § 1983 is 'to provide compensatory relief to those deprived of their federal rights by state actors.'" *Hardy v. New York City Health and Hospitals Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (quoting *Felder v. Casey*, 487 U.S. 131, 141 (1988)).

C.     *Analysis*

1.     *False Arrest/False Imprisonment*[12]

The elements necessary to state a claim for false arrest under § 1983 are

"substantially the same" as those necessary to state a claim for false arrest under New York

law.[13] *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d

845, 852 (2d Cir. 1996)).  To state a claim for false arrest under New York law, a plaintiff must

show that (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of

the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement

was not otherwise privileged.  *Singer v. Fulton County Sheriff*, 64 F.3d 110, 118 (2d Cir. 1995).

Confinement is "privileged" if the defendant had probable cause to arrest the plaintiff.  *Jocks*,

316 F.3d at 135.  Probable cause serves as a "complete defense to an action for false arrest."

*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).

An officer has probable cause to arrest when he has "knowledge or reasonably

trustworthy information of facts and circumstances that are sufficient to warrant a person of

reasonable caution in the belief that the person to be arrested has committed . . . a crime."

*Weyant*, 101 F.3d at 852.  In evaluating whether probable cause exists, courts must look to the

"totality of the circumstances," *Caldarola*, 298 F.3d 158, 162 (2d Cir. 2002), and consider the

---

[12]     Struthers alleges separate claims of false arrest and false imprisonment but I treat them as one. *See Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) ("'The common law tort of false arrest is a species of false imprisonment . . . .'") (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).

[13]     Struthers brings a cause of action against defendant officers for false arrest under § 1983 and New York common law.  Am. Compl. ¶¶ 41-46.  In addition, he brings a cause of action against all defendants for false arrest under Section 12 of the New York State Constitution.  *Id.* ¶¶ 91-95.  In *Brown v. State*, 652 N.Y.S. 3d 223, 233 (N.Y. 1996), the New York Court of Appeals held that a cause of action to recover damages may be asserted for violations of Section 12 of the New York State Constitution.  However, in *Martinez v. City of Schenectady*, 97 N.Y. 2d 78 (N.Y. 2001), the Court clarified that such a right is a "narrow" one and indicated that recognition of such a claim is not necessary where the claimant has an alternate "avenue of redress."  *Id.* at 83.  "Thus, a private right of action for a violation of the New York Constitution is unavailable where an alternative remedy, such as, among other things, a common-law action for damages, exists."  *Waxter v. State*, 826 N.Y.S. 2d 753, 754 (3d Dep't 2006).  Because a cause of action for false arrest exists under New York common law, I dismiss this claim to the extent that it is brought under the New York State Constitution.  *See Broughton v. State*, 37 N.Y. 2d 451 (N.Y. 1975) (discussing common law action for false imprisonment).

"facts available to the officer at the time of arrest," *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997) (internal citations omitted).  The court may determine as a matter of law whether or not probable cause existed "if there is no dispute as to the pertinent events and the knowledge of the officers."  *Weyant*, 101 F.3d at 852 (internal citations omitted).

Defendants assert that probable cause existed to arrest Struthers because Fernandez identified Struthers to Morales and Sarman as one of the individuals who had assaulted him on the bus.  Defs.' Mem. in Support Mot. Summ. J. 4.  Struthers claims that there exists a factual dispute as to whether Fernandez identified Struthers to Morales and Sarman. Struthers's Mem. in Opp. Mot. Summ. J. 13.  Specifically, Struthers contends that Morales and Sarman were not the first responding officers to the scene and were not the officers with whom Fernandez canvassed the area.  *Id.*  Struthers further contends that Struthers was not among the group of individuals identified by Fernandez to the responding officers.  *Id.* at 13-14.

It is undisputed that following the assault, the bus driver called 911 and a dispatcher put out a message over the police radio, alerting officers to the assault.  Beath Decl. Ex. A, at 10:14-16 (Fernandez Dep.); Mosaku Decl. Ex. 6 (NYPD Radio SPRINT Report).  It is further undisputed that two officers responded to the radio call and arrived at the scene shortly thereafter.  Beath Decl. Ex. A, at 11:17-22, 12:13-15 (Fernandez Dep.).  Finally, it is undisputed that Fernandez got into the vehicle of the responding officers in order to canvass the area for the individuals who had assaulted him.  *Id.* at 13-5:13.

The record as a whole suggests that Morales and Sarman were the first responding officers to the scene and that Fernandez got into their vehicle to canvass the area for the individuals who assaulted him.  Both Morales and Sarman testified to hearing the message over the police radio, alerting officers to the assault, and to proceeding to the scene.  Beath Decl. Ex.

11

B, at 9:11-10:1 (Morales Dep.); Beath Decl. Ex. C, at 17:21-18:13, 18:25-19:7 (Sarman Dep.).

During Morales's deposition, he consulted his memo book to refresh his recollection, and noted

that he received notification of the assault at 9:22 PM and arrived at the scene at 9:25 PM.  Beath

Decl. Ex. B, at 13:7-23 (Morales Dep.).  Similarly, during Sarman's deposition, he consulted his

memo book to refresh his recollection, and noted that he also received notification of the assault

at 9:22 PM and arrived at the scene at 9:25 PM.  Beath Decl. Ex. C, at 22:23-24:16 (Sarman

Dep.).  Morales further testified that he and Sarman were the first officers to arrive at the scene.

Beath Decl. Ex. B, at 17:16-24 (Morales Dep.).  Morales and Sarman's testimony is consistent

with the timeline presented in the NYPD Radio SPRINT Report, Beath Decl. Ex. D, and with

Fernandez's testimony that two officers arrived on the scene about three minutes after he asked

the bus driver to dial 911, Beath Decl. Ex. A, at 10:15-18, 11:17-22, 12:9-12 (Fernandez Dep.).

Both Morales and Sarman testified that, upon arriving at the scene, they found

Fernandez and spoke with him.  Beath Decl. Ex. B, at 21:4-22:2, 22:23-23:8 (Morales Dep.);

Beath Decl. Ex. C, at 22:2-22 (Sarman Dep.).  Morales testified to asking Fernandez to canvass

the area with them for the individuals who had assaulted him, and to Fernandez getting into the

back seat of the vehicle.  Beath Decl. Ex. B, at 23:2-24 (Morales Dep.).  Morales further testified

that no other officers had arrived at the scene by the time Fernandez got into the vehicle.  *Id*. at

23:19-21.  This testimony is consistent with Fernandez's testimony that the two officers who first

responded to the scene asked him to canvass the area with them and that he got into the back seat

of their vehicle.  Beath Decl. Ex. A, at 13:9-13, 13:21-24 (Fernandez Dep.).

Struthers contends that Morales and Sarman were not the first responding officers

to the scene and that Fernandez did not get into their vehicle to canvass the area on the basis of

two small inconsistencies in the record.  First, while Morales and Sarman both testified that they

were driving an unmarked silver Chevrolet Impala on the evening of April 30, 2011, Beath Decl.

Ex. B, at 17:25-18:10, 23:9-18 (Morales Dep.); Beath Decl. Ex. C, at 16:18-24 (Sarman Dep.),

Fernandez testified that the first responding officers were driving an unmarked blue Impala,

Beath Decl. Ex. A, at 12:2-5, 12:16-23 (Fernandez Dep.).  Second, while Morales and Sarman

both testified that they were wearing uniforms on the evening of April 30, 2011, Mosaku Decl.

Ex. 5, at 18:21-19:2 (Morales Dep.); Mosaku Decl., Ex. 4, at 15:20-16:17 (Sarman Dep.),

Fernandez testified that the first responding officers were in plainclothes, Mosaku Decl., Ex. 1, at

12:6-15, 13:5-8 (Fernandez Dep.).

       But these inconsistencies must contend with the testimony provided by Morales

and Sarman recounting this sequence of events.  In particular, both defendant officers testified to

the short interval – three minutes – between receiving notification of the assault and their arrival

at the scene.  This testimony is consistent with the NYPD Radio SPRINT Report and

Fernandez's testimony.  Morales also testified that he asked Fernandez to canvass the area and

that Fernandez got into the back seat of their vehicle.  This testimony is consistent with

Fernandez's testimony that the two responding officers asked him to canvass the area with them

and that he got into the back seat of their vehicle.  Finally, Fernandez himself later testified as to

haziness at least with respect to recalling the color of the car driven by the responding officers.

Beath Decl. Ex. A, at 12:16-23 ("Q.  Do you remember what type of car they showed up in?  A.

It was definitely a blue Impala. . . .  I am trying to remember, because I was very angry, you

know, coming from work.  I think it was blue. . . .") (Fernandez Dep.).

       I am convinced, however, that a genuine dispute exists over whether Struthers

was among the individuals identified by Fernandez as one of his assailants.  According to

Morales's version of events, while canvassing the area, Fernandez identified a group of

approximately four black males as the individuals who assaulted him.  Beath Decl. Ex. B, at

25:11-14, 25:22-26:10, 26:24-27:8 (Morales Dep.).  Fernandez also "pointed directly" at

Struthers and specifically identified him as one of the assailants.  *Id*. at 26:11-19.  Sarman asked

the males to stop, at which point they all began to run in separate directions.  *Id*. at 28:4-29:2,

29:19-25.  As soon as they started running, Sarman exited the vehicle and pursued Struthers, who

was running northbound.  *Id*. at 31:15-3:2, 33:10-17.  At some point, Struthers tripped and fell on

his own accord.  Mosaku Decl. Ex. 5, at 39:10-25 (Morales Dep.).  After Struthers fell, Morales

and Sarman placed Struthers under arrest.  *Id*. at 40:5-41:9.  Morales returned to his vehicle to

continue canvassing for the unapprehended individuals; Sarman remained on the street with

Struthers.  *Id*. at 41:25-43:8.  Fernandez remained in the rear of the vehicle as Morales continued

the canvass.  *Id*. at 43:6-8.  Morales drove to a vacant lot, where another officer brought out a

second individual, Raheim Marcus, who Morales placed under arrest.  *Id*. at 44:11-24, 46:7-13.

Fernandez identified Marcus as one of the individuals who assaulted him.  *Id*. at 48:6-12.

Morales and Fernandez then returned to the precinct.  *Id*. at 49:13-19.

   According to Sarman, while canvassing the area, Fernandez identified a group of

approximately four or five black males as the individuals who assaulted him.  Beath Decl. Ex. C,

at 44:10-45:11 (Sarman Dep.).  Sarman asked the males to stop, at which point they all began to

run northbound.  *Id*. at 45:25-46:3, 46:11-22, 47:2-7.  Morales and Sarman pursued the males in

the vehicle.  *Id*. at 46:16-25.  At some point, some of the males started running in different

directions, and Sarman exited the vehicle in pursuit of one individual, who he later identified as

Struthers, running northbound.  *Id*. at 47:10-48:23, 50:15-24, 59:19-25.  Sarman caught up to

Struthers and grabbed him from behind, resulting in the two of them falling forward onto the

ground.  *Id*. at 51:18-19, 52:10-19.  After a brief struggle, Sarman placed Struthers under arrest.

Mosaku Decl. Ex. 4, at 52:24-54:17 (Sarman Dep.).  Following the arrest, Morales went in

pursuit of the other individuals.  *Id*. at 54:15-20.  After placing Struthers under arrest, Sarman

handed him over to officers in a marked police vehicle.  *Id*. at 58:16-59:9.

   Sarman's version of events following Struthers's arrest diverges significantly

from Morales's, in that he describes a subsequent "show-up" at which Fernandez identified

Struthers and another individual as two of the men who assaulted him on the bus.  According to

Sarman, after handing Struthers over to the marked patrol car, he continued his canvass, where

he came across another of the individuals identified by Fernandez.  *Id*. at 59:12-14.  Following a

struggle, during which Morales arrived, Sarman placed this individual under arrest.  *Id*. at 60:25-

61:20.  Sarman walked this individual back to 55 Bowen Street, where the vehicle that he and

Morales had been driving was parked.  *Id*. at 64:6-15.  The officers who had been watching

Struthers also brought Struthers to this location.  *Id*. at 64:21-65:2.  Morales and Sarman then

conducted a show up, during which Fernandez positively identified Struthers and the other

arrestee.  *Id*. at 65:5-14, 66;16-25.

   Fernandez presents a sequence of events that diverges widely from that presented

by Morales and Sarman.  According to Fernandez, while canvassing the area, he identified a

group of three black males as the individuals who assaulted him.  Beath Decl. Ex. A, at 15:2-16

(Fernandez Dep.).  The officers then stopped their vehicle in front of the three males, got out of

their vehicles, and said "Don't move."  *Id*. at 16:12-19.  One of the officers had his gun drawn.

Mosaku Decl. Ex. 1, at 29:21-23 (Fernandez Dep.).  At that point, a marked police vehicle

arrived, and the three males were arrested and placed in that vehicle.  Beath Decl. Ex. A, at 17:3-

18:6, 28:21-29:9.  As Fernandez headed to the precinct with Morales and Sarman, he observed

an individual up against another police car.  Mosaku Decl. Ex. 1, at 30:23-31:11.  Fernandez

identified that individual to Morales and Sarman as another of his assailants.  *Id*. at 33:18-20,

34:7-10.  Fernandez then returned to the precinct with Morales and Sarman.  *Id*. at 19:8-13.

Struthers also presents a sequence of events that diverges widely from that

presented by Morales and Sarman.  According to Struthers, he was walking home alone from a

deli when he observed police officers in an unmarked vehicle cruising alongside him.  Mosaku

Decl. Ex. 2, at 74:13-76:3 (Struthers Dep.).  There were three uniformed officers in the car.  *Id*.

at 78:10-13, 79:15-80:3.  One of the officers tried to get Struthers's attention but Struthers did

not respond and continued walking.  *Id*. at 79:15-23, 80:4-81:1.  The car stopped in front of

Struthers, cutting off his path, and two of the officers – who were seated in the front passenger

seat and the rear – exited the vehicle.  *Id*. at 81:20-82:2, 83:11-21.  One of the officers grabbed

Struthers and placed his hands behind his back, while the other took him down by the waist.  *Id*.

at 84:12-24, 87:14-89:4.  Struthers was handcuffed and placed under arrest.  *Id*. at 93:6-12.

Struthers was then placed in the back seat of the car and eventually transported to 55 Bowen

Street, where he was transferred to a marked police vehicle.  *Id*. at 105:1-19, 133:10-13.

These conflicting narratives cast significant doubt over the exact circumstances of

Struthers's arrest.  According to Morales, Sarman, and Fernandez, Fernandez identified a group

of males as the individuals who assaulted him.  Morales and Sarman claim that Struthers was

among those males and that they had to chase him prior to his arrest.  Struthers claims, however,

that he was walking by himself at the time of his arrest.  He further claims that the police vehicle

that forced him to stop had three police officers, two of whom arrested him.  Struthers's narrative

potentially overlaps with Fernandez's, which indicates that an individual was separately arrested

by other officers.

Defendants assert that Struthers was one of the individuals among the larger group that Fernandez identified because Fernandez pointed out a male wearing red and Struthers admitted to wearing red on that evening.  Defs. Reply Mot. Summ. J. 3.  I am not convinced that this evidence is enough to resolve the conflict in the record as to whether Struthers was in that larger group.  Fernandez testified that one of the three males he identified as his assailants was wearing a red shirt, Beath Decl. Ex. A, at 28:8-12 (Fernandez Dep.), whereas Struthers testified that he was wearing a red hoody, Beath Decl. Ex. E, at 55:23-56:8 (Struthers Dep.).  Moreover, Struthers testified that Marcus, one of the other individuals who was arrested that evening may have also been wearing red, specifically a vest or a hoody.  Mosaku Decl. Ex. 2, at 135:7-11 (Struthers Dep.).

Defendants further suggest that the record demonstrates that Fernandez positively identified every individual that was arrested.  Defs.' Reply Mot. Summ. J. 3.  In light of the conflicting narratives, defendants' argument assumes that Struthers was the individual that Fernandez observed being separately arrested, a fact that the record does not conclusively establish.  But even if Struthers was the individual Fernandez observed being separately arrested, Fernandez's testimony indicates that he did not identify this individual prior to his arrest, but either during or after his arrest.  Mosaku Decl. Ex. 1, at 33:10-21.  Defendants' argument for probable cause rests on the assumption that Fernandez positively identified each individual *prior* to his arrest.  Accordingly, I cannot conclude as a matter of law that defendants had probable cause to arrest Struthers.[14]

---

[14]     In the alternative, defendants argue that defendant officers are entitled to qualified immunity from the false arrest claim.  "Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  Arguable probable cause exists if " (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id*. (quoting *Golino v. City of New York*, 950 F.2d 864, 868 (2d Cir. 1991)).  Here, defendants' argument that arguable probable cause exists is premised

2.     *Malicious Prosecution*[15]

To prevail on a malicious prosecution claim under § 1983, a plaintiff must demonstrate a violation of his rights under the Fourth Amendment and establish the elements of a state law malicious prosecution claim.  *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). To state a claim for malicious prosecution under New York law, a plaintiff must show that "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiffs' favor."  *Ricciuti*, 124 F.3d at 130.  Defendants assert that summary judgment denying this claim is appropriate because Struthers fails to meet any element of the claim as a matter of law.

There exists "a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding."  *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (citation and internal quotation marks omitted); *see also Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999) ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment.").  A plaintiff may overcome the presumption of independent prosecutorial judgment, however, by demonstrating that "the defendant played an active role in the prosecution, such as giving advice and

---

entirely on the assumption that "there was probable cause to arrest and prosecute plaintiff for assault on the complaint of, and identification by, the victim of the crime, Carlos Fernandez." Defs.' Mem. in Support Mot. Summ. J. 14.  Because I conclude that there is a triable issue of fact as to whether defendants had probable cause to arrest Struthers, I find, for the same reasons, that the defendant officers have failed to establish that they are entitled to qualified immunity on the false arrest claim.

[15]     Struthers brings a cause of action against defendant officers for malicious prosecution under § 1983 and New York common law.  Am. Compl. ¶¶ 47-62.  In addition, he brings a cause of action against all defendants for malicious prosecution under Section 12 of the New York State Constitution.  *Id.* at ¶¶ 91-95.  For the reasons discussed above, because a cause of action for malicious prosecution exists under New York common law, I dismiss this claim to the extent that it is brought under the New York State Constitution.  *See Broughton*, 37 N.Y. 2d 451 (discussing common law action for malicious prosecution).

encouragement or importuning the authorities to act." *Id.* (quoting *DeFilippo v. County of Nassau*, 183 N.Y.S. 2d 283, 284 (2d Dep't 1992)).  With respect to law enforcement officers, courts have found a triable issue of fact as to the initiation element where a defendant police officer "brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." *Espada*, 522 F. Supp. 2d at 553 (citing *Ricciuti*, 124 F.3d at 130; *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382-83 (S.D.N.Y. 2005)).

There is no record evidence that any police officer other than Morales was involved in the prosecution of Struthers, and accordingly, summary judgment in favor of Sarman on the malicious prosecution claim is granted.  With respect to Morales, it is undisputed that he swore out the criminal complaint charging Struthers with assaulting and harassing Fernandez. Beath Decl. Ex. H (Richmond County Criminal Court Complaint).  This action alone is sufficient to satisfying the first element.  *Rounseville v. Zahl*, 13 F.3d 624, 628 (2d Cir. 1994) ("[D]efendants swore out an accusatory instrument, which would appear under New York law to satisfy the requirement that the defendants' initiated a criminal proceeding against [plaintiffs].") (citing *DeFilippo*, 583 N.Y.S. 2d at 284); *Ricciuti*, 124 F.3d at 130 ("[A] jury could clearly find that [defendant] started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault.").

In a malicious prosecution action, "the determination of probable cause is assessed in light of the facts known or reasonably believed at the time prosecution was initiated, as opposed to at the time of arrest." *Drummond v. Castro*, 522 F. Supp. 2d 667, 678 (S.D.N.Y. 2007) (quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)); *see also Rounseville*, 13 F.3d at 629 ("In the context of a malicious prosecution claim, probable cause under New

York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable

man in the belief that he has lawful grounds for prosecuting the defendant in the manner

complained of.'") (quoting *Pandolfo v. U.A. Cable Systems of Watertown*, 568 N.Y.S. 2d 981,

982 (4th Dep't 1991)).  As discussed above, Struthers has raised a triable issue of fact as to

whether he was one of the individuals identified by Fernandez as one of his assailants.

Moreover, defendants present no evidence that Morales was in possession of any additional

facts, other than the purported identification by Fernandez, at the time he swore out the criminal

complaint.  Summary judgment is therefore inappropriate on the basis of probable cause.

   The Second Circuit has held that where there is a disputed issue of fact as to the

existence of probable cause, the element of malice becomes a triable issue of fact as well.

*Ricciuti*, 124 F.3d at 131 (holding that "lack of probable cause generally raises an inference of

malice sufficient to withstand summary judgment"); *Rounseville*, 13 F.3d at 631 (holding that

"our conclusion that the lack of probable cause presents a jury question likewise suggests that the

existence of malice cannot be resolved through summary judgment").  Thus, I also find there to

be a triable issue of fact as to the element of malice.

   The existence of favorable termination is determined in accordance with

applicable state law.  *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992).  Under New York law,

"[a]s a general rule, . . . any final termination of a criminal proceeding in favor of the accused,

such that the proceeding cannot be brought again, qualifies as a favorable termination for

purposes of a malicious prosecution action."  *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (N.Y.

2000).  "New York law does not require a malicious prosecution plaintiff to prove her innocence,

or even that the termination of the criminal proceeding was indicative of innocence."  *Rothstein*

*v. Carriere*, 373 F.3d 275, 286 (2d Cir. 2004).  "Rather, the plaintiff's burden is to demonstrate a

final termination that is not inconsistent with innocence." *Id.* (citing *Smith-Hunter*, 95 N.Y. at 198-99) ("[T]he question is whether, under the circumstances of each case, the disposition was inconsistent with the innocence of the accused.").  Examples of final terminations inconsistent with innocence include those where "the charge is dismissed because of misconduct on the part of the accused," "the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused," or "the charge is withdrawn or dismissed out of mercy requested or accepted by the accused." *Smith-Hunter*, 95 N.Y. 2d at 196-97.

Defendants assert that the District Attorney dismissed the case against Struthers because the complaining victim – *i.e.*, Fernandez – refused to cooperate and that this fails to constitute a favorable termination.  Defs.' Mem. in Support Mot. Summ. J. 7-8.  Struthers disputes that the case was dismissed because of Fernandez's refusal to cooperate.  Struthers Mem. in Opp. Mot. Summ. J. 16-17.  Rather, he claims that it was dismissed on speedy trial grounds. Struthers Mem. in Opp. Mot. Summ. J. 16-17.  Struthers argues, in the alternative, that the dismissal constitutes a favorable termination because the prosecutor abandoned the charges and New York recognizes such abandonment as a type of favorable determination.[16] *Id.*

The record clearly indicates that the matter was dismissed on the District Attorney's motion based on Fernandez's refusal to cooperate.  One of the prosecutors assigned to the case, Adam J. Silberlight, declared that he "approved the decision, on behalf of the DA's office, to move to dismiss the charges against Struthers.  Beath Decl. Ex. J ¶ 6 (Silberlight Decl.).  The transcript of the criminal court proceedings from August 11, 2011 reflect that the prosecutor stated to the court "Dismissed per uncooperative witness," and that the court

---

[16]     Struthers makes the additional argument that Fernandez was not uncooperative, as his testimony indicates that he was not contacted regarding the case following the date of the incident.  But Fernandez did testify that he received "a court appearance," for which he failed to show up because he was working at the time.  Beath Decl. A, at 23:17-19 (Fernandez Dep.).

thereafter dismissed the charges against Struthers.  Mosaku Decl. Ex. 12 (Aug. 11, 2011 Tr.).

Finally, the Certificate of Disposition for the case indicates that the case was dismissed upon

"MOTION OF DA."  Beath Decl. Ex. K.

Struthers's basis for arguing that the case was dismissed on speedy trial grounds

is that the transcript of the August 11, 2011 criminal court proceedings indicates that Struthers's

attorney stated, "I think time has run on these," following which the court sought a response

from the prosecutor, who then stated "Dismissed per uncooperative witness."  Mosaku Decl. Ex.

12 (Aug. 11, 2011 Tr.).  The statement by Struthers's attorney is not enough to raise a genuine

dispute over whether the case was dismissed on speedy trial grounds or on the District

Attorney's motion based on Fernandez's refusal to cooperate.  The transcript indicates that

Struthers's attorney merely surmised that time had run on the charges against Struthers and that

the court did not affirm that it had.  It then indicates that the District Attorney made a formal

motion to dismiss the charges "per uncooperative witness," following which the court dismissed

the case against Struthers.

Struthers next casts the dismissal on the basis of Fernandez's refusal to cooperate

as an abandonment of prosecution and argues that New York recognizes such abandonment as

constituting favorable termination.  As Struthers notes, there is a line of New York cases that

stand for the principle that the abandonment of prosecution by a complaining victim can

constitute a favorable termination.  Struthers Mem. in Opp. Mot. Summ. J. 17 (citing cases).

But, as defendants correctly counter, "more recent state and federal cases cast doubt on the

viability of [this] abandonment analysis."  Defs.' Reply Mot. Summ. J. 6-7 (citing *O'Brien v.*

*Alexander*, 101 F.3d 1479, 1486-87 (2d Cir. 1996) (noting "atrophy of the abandonment prong"

of favorable termination) (collecting cases)).  Thus, I reject Struthers's argument that, under New

York law, abandonment of prosecution necessarily constitutes a favorable termination.

   At the same time, I disagree with defendants' position that the dismissal of the

charges against an individual on the basis of an uncooperative witness can never constitute a

favorable termination.  The cases cited by defendants rely on the premise that, under New York

law, "the touchstone for determining a favorable termination is whether 'the final disposition is

indicative of innocence.'"  Defs.' Reply Mot. Summ. J. 7 (quoting *Russell v. Smith*, 68 F.3d 33,

36 (2d Cir. 1995)).  But the New York Court of Appeals has explicitly clarified that the standard

is not whether the final termination is "indicative of innocence," but whether it is "*inconsistent*

*with innocence*."  *Smith-Hunter*, 95 N.Y.2d at 198-99 ("In *MacFawn*, . . . the Court described a

favorable termination as one that 'involves the merits and indicates the accused's innocence.' . . .

That language, however, was not necessary to the resolution of th[e] case[] . . . .  Our holdings . .

. stand only for the proposition that dispositions inconsistent with innocence . . . cannot be

viewed as favorable to the accused.") (emphasis added); *id*. at 200 (Rosenblatt, J., concurring)

("The Court . . . has articulated the test correctly, holding that the speedy trial dismissal was 'not

inconsistent with innocence' and therefore constituted a favorable termination.  I write separately

only to emphasize that this test is far more sensible than the 'indicative of innocence' test . . . .).

The dismissal of a case on the basis of an uncooperative witness is a termination that is not

inconsistent with innocence.  This conclusion is buttressed by considering the examples provided

by the Court of Appeals of instances where termination has been found to be inconsistent with

innocence – *i.e.*, due to misconduct by the accused, compromise with the accused, or acceptance

of mercy by the accused.  Each of these examples carries the "aroma of guilt."  *Smith-Hunter*, 95

N.Y.2d at 200 (Rosenblatt, J., concurring).  But the dismissal of a case on the basis of an

uncooperative witness seems more appropriately described as a circumstance where the plaintiff "was relieved of criminal charges in a neutral manner, i.e. one that carried no indicia of guilt or innocence." *Id.* Accordingly, defendants' motion for summary judgment as to the claim of malicious prosecution is denied as to Morales.[17]

    3.    *Denial of Right to Fair Trial – Fabrication of Evidence*[18]

"When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the government official infringes the accused's constitutional right to a fair trial in a manner that is redressable in § 1983 action for damages." *Morse v. Spitzer*, No. 07-cv-4793, 2012 WL 3202963, at *3 (E.D.N.Y. Aug. 3, 2012) (citing *Zahrey v. Coffey*, 221 F.3d 342, 348-49 (2d Cir. 2000)); *Ricciuti*, 124 F.3d at 130 ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983."). Defendants assert that

---

[17]     Defendants assert that defendant officers are entitled to qualified immunity from the malicious prosecution claim for the same reasons they are entitled to qualified immunity from the false arrest claim. I reject this argument for the same reasons.

[18]     The Second Circuit's decisions in *Ricciuti*, 124 F.3d 123, and *Jocks*, 316 F.3d 128 suggest that allegations of fabrication of evidence can give rise to both a claim for malicious prosecution and a claim for denial of the right to fair trial. While district courts in this Circuit have expressed some confusion as to whether the same allegation of fabrication of evidence gives rise to two independent constitutional claims, *see Morse v. Spitzer*, No. 07-cv-4793, 2012 WL 3202963, at *2-*6 (E.D.N.Y. Aug. 3, 2012) (describing confusion); *Nibbs v. City of New York*, 800 F. Supp. 2d 574, 576 (S.D.N.Y. 2011) (same), there appears to be an emerging consensus that plaintiffs may allege both claims, *see Nibbs*, 800 F. Supp. 2d at 576 (citing cases). In cases, such as this one, where the evidence fabrication claim "arise[s] from allegations that a police officer fabricated evidence and forwarded it to prosecutors *in order to provide probable cause* for an arrest or prosecution . . ., the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together." *Morse*, 2012 WL 3202963, at *6. Nevertheless, "[e]ven in such cases . . . these remain distinct constitutional claims." *Id.*

summary judgment denying this claim is appropriate because Struthers has failed to demonstrate that Morales or Sarman fabricated any evidence.

As an initial matter, the parties dispute exactly what evidence was forwarded to prosecutors. Defendants argue that the only evidence forwarded to prosecutors was the criminal complaint, sworn to and signed by Morales. Defs.' Mem. in Support Mot. Summ. J. 8-9. Struthers contends, on the other hand, that Morales and/or Sarman forwarded to prosecutors an array of arrest paperwork – On Line Booking System Arrest Worksheet, Omniform System-Arrests, Complaint Report Worksheet, Omniform System-Complaints – as well as the criminal complaint. Struthers Mem. in Opp. Mot. Summ. J. 19-20. Struthers presents no evidence indicating that any of the arrest paperwork was forwarded to prosecutors.[19] Thus, I consider this claim only with respect to the criminal complaint.

There is no record evidence that any police officer other than Morales was involved in preparing the criminal complaint, and accordingly, summary judgment in favor of Sarman on the denial of the right to fair trial claim is granted. I find, however, that there is a triable issue of fact as to whether Morales fabricated information contained in the criminal complaint. The complaint, as sworn to by Morales, states that Fernandez informed him that Struthers, along with three others, struck him and spit on him. Beath Decl. Ex. H (Richmond County Criminal Court Complaint). As discussed above, Struthers has raised a triable issue of fact as to whether Fernandez positively identified him to Morales as one of the assailants. Accordingly, defendants' motion for summary judgment as to the claim of the denial of the right to fair trial is granted as to Sarman, but denied as to Morales.

---

[19] In his opposition papers, Struthers states that Morales and/or Sarman "prepared and/or forwarded to the District Attorney" the arrest paperwork. Struthers Mem. in Opp. Mot. Summ. J. 19-20. The use of the "and/or" construction suggests that some or all of this paperwork may have been prepared by Morales or Sarman but never forwarded to prosecutors.

4.     *Excessive Force*[20]

A police officer's use of force is "excessive" in violation of the Fourth

Amendment if it is "objectively unreasonable" in light of the facts and circumstances known to

the officer.  *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citing *Graham v. Connor*, 490

U.S. 386, 397 (1989)).  The reasonableness of the force employed "requires a careful balancing

of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'

against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  This test of reasonableness "requires careful

attention to the facts and circumstances of each particular case, including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officer or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

(citing *Tennessee*, 471 U.S. at 8-9).  "[N]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Maxwell v.*

*City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (citations and internal quotation marks

omitted).  But "[i]f the force used was unreasonable and excessive, the plaintiff may recover

even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924

(2d Cir. 1987).

Struthers appears to assert that defendants employed excessive force against him

when they (1) threw him to the ground during his arrest[21] and (2) tightened his handcuffs after an

---

[20]      Struthers brings a cause of action against defendant officers for excessive force under § 1983 and
against all defendants under Section 12 of the New York State Constitution.  Am. Compl. ¶¶ 63-66, 91-95. For the
reasons discussed above, because a cause of action for excessive force exists under New York common law (even
though Struthers did not bring it), I dismiss this claim to the extent that it is brought under the New York State
Constitution.  *See Holland v. Poughkeepsie*, 935 N.Y.S. 2d 583 (2d Dep't 2011) (discussing common law action for
excessive force).

[21]      Struthers claims that defendants used excessive force when they threw him to the ground the
*second* time *after* he was already handcuffed.  Mosaku Decl. Ex. 2, at 94:13-25, 96:25-97:1, 98:10-99:8, 99:17-
100:1, 100:16-104:1 (Struthers Dep.).

officer discovered him using his cell phone in the back seat of the police vehicle.   Struthers

Mem. in Opp. Mot. Summ. J 21-23.  Defendants claim that summary judgment denying this

claim is appropriate because Struthers has failed to demonstrate the personal involvement of

Morales and Sarman.  Defs.' Mem. in Support Mot. Summ. J. 9-11.

        Personal involvement of a defendant is a prerequisite to a damages award for a §

1983 claim.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Johnson v. Glick*, 481 F.2d 1028,

1034 (2d Cir. 1973).  A police officer is personally involved in the use of excessive force for

purposes of a § 1983 claim where "[1] a police officer directly participates in an assault, or [2]

was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet

failed to do so."  *Espada*, 522 F. Supp. 2d at 555 (citing *Younger v. City of New York*, 480 F.

Supp. 2d 723, 732 (S.D.N.Y. 2007)).

        With respect to the first purported use of excessive force – throwing Struthers to

the ground during his arrest – defendants' argument is unavailing.  Their own Rule 56.1

statement avers that "Officer Sarman  . . . pursued, and apprehended the male who was wearing

red, later identified as plaintiff Eon Struthers, . . . bringing him to the ground then placing

handcuffs on him."  Defs.' Rule 56.1 ¶ 10.  Sarman himself testified to giving chase to Struthers,

tackling him, and then placing him under arrest.  Beath Decl. Ex. C, at 50:15-51:18, 52:10-19,

52:24-53:22 (Sarman Dep.).  While Sarman testified that he alone placed the handcuffs on

Struthers and arrested him, Morales testified to assisting Sarman with these actions.[22]  Beath

Decl. Ex. B, at 40:5-41:9 (Morales Dep.).

---

[22]    Morales and Sarman's testimony suggests that whatever involvement they had in purportedly throwing Struthers to the ground occurred during his arrest and ended once the handcuffs were on Struthers.  But there is enough conflicting evidence in the record regarding the circumstances of Struthers's arrest that I am not convinced that this testimony warrants finding that Morales and Sarman were not involved in the purported excessive use of force when Struthers was thrown to the ground the second time.

Defendants ignore their own narrative of events, focusing on the counter-narrative provided by Struthers, in which he was thrown to the ground and arrested by unidentified officers.  Struthers Rule 56.1 ¶ 10.  But defendants cannot rely on Struthers's counter-narrative when it suits them and then revert to their own when it does not – *e.g.*, assert that Morales and Sarman did arrest Struthers on the false arrest claim.  As discussed above, these conflicting narratives raise significant questions regarding the circumstances of Struthers's arrest.  I conclude here that they raise a triable issue of fact as to whether Morales and Sarman were personally involved – and if so, to what extent – in the purported use of excessive force against Struthers.

With respect to the second purported use of excessive force – the tightening of handcuffs – I agree with defendants.  Struthers testified that after his arrest, he was placed in the back of a police vehicle.  Beath Decl. Ex. E, at 105:1-18 (Struthers Dep.).  While in the back of the police vehicle, he answered his cell phone.  *Id*. at 109:9-110:3.  At that time, Struthers claims, an unidentified officer confiscated his phone and tightened the handcuffs.  *Id*. at 115:17-19, 117:25-118:4.  The record indicates that this unidentified officer was neither Morales nor Sarman.  Morales testified that after placing Struthers under arrest, he left him in the custody of Sarman, and continued his canvass of the area.  Mosaku Decl. Ex. 5, at 41:25-43:8 (Morales Dep.).  Sarman testified that after placing Struthers under arrest, he handed him over to officers in a marked police car.  Mosaku Decl. Ex. 4, at 58:16-59:9 (Sarman Dep.).  On the basis of these facts, I conclude that neither Morales nor Sarman was personally involved in the tightening of Struthers's handcuffs.  Accordingly, defendants' motion for summary judgment as to the excessive force claim is denied with respect to the first purported use of excessive force but granted with respect to the second purported use of excessive force.

5.      *State Assault and Battery*

Federal excessive force claims and state law assault and battery claims against police officers are nearly identical.  *See Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order) ("[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantively identical.") (quoting *Posr v. Doherty*, 944 F. 2d 91, 94-95 (2d Cir. 1991) (alterations in original); *Pierre-Antoine v. City of New York*, No. 04-cv-6987, 2006 WL 1292076, at *8 (S.D.N.Y. May 9, 2006) ("[T]he test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim.") (citations omitted).  Defendants assert that summary judgment denying this claim is appropriate because Struthers has failed to demonstrate the personal involvement of Morales or Sarman.  For the reasons discussed above, I conclude that there is a triable issue of fact as to whether Morales and Sarman were personally involved in throwing Struthers to the ground but not as to the tightening of Struthers's handcuffs.

Struthers asserts that even if Morales and Sarman were not personally involved in tightening Struthers's handcuffs, the City is still liable for this conduct under the theory of vicarious liability.  "Unlike the claims pursuant to 42 U.S.C. § 1983, a municipality may be held vicariously liable for torts committed by its employees while acting within the scope of his or her employment."  *Holland v. City of Poughkeepsie* 935 N.Y.S. 2d 583, 589 (2d Dep't 2011) (citing *Eckardt v. City of White Plains*, 930 N.Y.S. 2d 22 (2d Dep't 2011); *Ashley v. City of New York*, 779 N.Y.S.2d 502 (2d Dep't 2004)).  Defendants contend that this claim must still be dismissed because the tightening of Struthers's handcuffs did not constitute excessive force.

29

"Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 176 (E.D.N.Y. 2010) (quoting *Esmont v. City of New York*, 371 F. Supp. 3d 202, 214 (E.D.N.Y. 2005)).  "The reasonableness of the handcuffing of an arrestee must be determined in light of the minimal amount of force necessary to maintain custody of [the arrestee]." *Esmont*, 371 F. Supp. 3d at 215.  A court is to consider evidence that "1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id*.; *Castro*, 739 F. Supp. 2d at 176; *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) .

Defendants assert that the tightness of Struthers's handcuffs was reasonable in light of the fact that prior to their adjustment Struthers was able to maneuver his hands so as to answer his cell phone.  Defs.' Mem. in Support Mot. Summ. J. 10.  This argument only addresses whether the handcuffs were unreasonably tight prior to their tightening; it does not address whether the handcuffs were unreasonably tight *after* they were tightened.  As to the latter, the record suggests that the handcuffs were excessively tight.  Struthers testified that the cuffs were too tight and that they were cutting into his skin.  Mosaku Decl. Ex. 2, at 117:15-17, 117:25-118:12, 119:25-120:3, 120:18-25 (Struthers Dep.).  He also testified that he asked the officer who tightened them to loosen them.  *Id*. at 117:15-17, 118:19-21.

Defendants further contend that Struthers suffered minimal injury.  Defs.' Mem. in Support Mot. Summ. J. 10.  Struthers testified that after the handcuffs were removed, he could see "the imprint of the handcuffs" around his wrist, that there were blisters and the "skin was peeled back, so it just showed like raw."  Mosaku Decl. Ex. 2, at 166:12 (Struthers Dep.).  He

further testified that he asked for medical treatment at court the next day, but declined to receive it after he was informed that it would delay his criminal processing.[23] *Id.* at 166:16-167:1. These facts are sufficient to satisfy the third prong of the test. *See Castro*, 739 F. Supp. 2d at 176 (holding that plaintiff complaining of discomfort from handcuffs that resulted in "imprints on his wrists and caused his wrists to become 'red and sore'" may allege sufficient facts to go to jury on whether force was excessive). Thus, there are sufficient facts in the record from which a reasonable jury could find that the tightening of Struthers's handcuffs amounted to excessive force. Accordingly, defendants' motion for summary judgment as to the assault and battery claim is denied with respect to the first purported use of force (as to all defendants) and denied (as to the City) and granted (as to Morales and Sarman) with respect to the second purported use of force.

> 6. *Unlawful Search*

To prevail on a § 1983 claim alleging unlawful search in violation of the Fourth Amendment, a plaintiff must demonstrate that the search was unreasonable. *See N.G. ex rel. S.C. v. Connecticut*, 382 F.3d 225, 233 (2d Cir. 2004). The Supreme Court has instructed courts to carefully evaluate the reasonableness of the search by considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The determination of reasonableness must be based on "all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985).

---

[23]     Struthers's testimony indicates that his hip was also bothering him and it is unclear whether he sought medical treatment solely for his hip or for his hip and wrists. Mosaku Decl. Ex. 2, at 166:16-22 (Struthers Dep.).

Struthers appears to assert that defendants unlawfully searched him (1) immediately after his arrest and (2) after his arrival at the precinct.  Am. Compl. ¶¶ 67-71. Defendants present no argument in support of summary judgment for the first purportedly unlawful search.  Rather, they focus their briefing on the second purportedly unlawful search. As to this search, defendants claim that summary judgment is appropriate because Struthers has failed to demonstrate the personal involvement of Morales and Sarman.  Defs.' Mem. in Supp. Mot. Summ. J. 11-12.

Struthers was unable to identify the officer who strip-searched him at the precinct. He testified that the officer who subjected him to this strip-search was not one of the officers who arrested him or brought him to the precinct.  Beath Decl. Ex. E, at 147:11-19, 153:3-6 (Struthers Dep.).  Accordingly, defendants' motion for summary judgment on the unlawful claim search is granted as to the strip search, but denied as to the search that occurred immediately following Struthers's arrest.[24]

### 7.   *Failure to Intervene*

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases).  An officer who fails to intervene is liable for the preventable harm caused by other officers where that officer observes or has reason to know that other officers have committed a constitutional violation, including the use of excessive force or unjustifiable arrest.

---

[24]     To the extent that Struthers's claim is brought under Section 12 of the New York State Constitution, it also survives.  Am. Compl. ¶¶ 91-95.  Unlike the false arrest, malicious prosecution, and excessive force claims, New York courts have expressly recognized that a plaintiff may bring a state constitutional tort claim for damages against defendants for violations of their right to be free of unreasonable searches and seizures.  *Brown v. State*, 841 N.Y.S. 2d 698, 704 (3d Dep't 2007) (citing *Brown v. State*, 89 N.Y. 2d 172 (N.Y. 1996)).  Defendants present no argument as to why summary judgment as to the state constitutional claim is appropriate.

*Id*. (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988), *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982)).  For liability to attach, "there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Id*. (citing *O'Neill*, 839 F.2d at 11-12).

Struthers claims that defendants failed to intervene and prevent four separate constitutional violations: false arrest, malicious prosecution, excessive force, and unlawful search.  *See* Am. Compl. ¶¶ 72-75.  Defendants assert that summary judgment denying this claim based on the false arrest and malicious prosecution claims is appropriate because Struthers has failed to demonstrate an underlying constitutional violation. They further assert that summary judgment denying this claim based on the excessive force and unlawful search claims is appropriate because Struthers has failed to demonstrate the personal involvement of Morales and Sarman.

The failure to intervene claim "is contingent upon the disposition of the primary claims underlying [such] claim."  *Matthew v. City of New York*, 10-cv-4991, 2012 WL 3839505, at *19 (E.D.N.Y. Sept. 5, 2012).   I have already concluded that the predicate claim for malicious prosecution cannot survive as a matter of law.  Therefore, the claim for failure to intervene based on the malicious prosecution claim likewise fails.

There are, however, genuine disputes of material fact as to Struthers's failure to intervene claim based on the false arrest, excessive force, and unlawful search claims.  While the record reveals conflicting narratives as to the circumstances of Struthers's arrest, it is clear that multiple officers were present when Struthers was arrested and purportedly thrown to the ground and searched.  Without a clearer picture of the precise constellation of the actors in these events and the roles that they played, I cannot conclude that Struthers's failure to intervene claim falters as a matter of law.

8.      *Municipal Liability*

"Congress did not intend municipalities to be held liable," under § 1983, "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth element reflects the principle that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997).  In other words, a municipality may not be held liable under § 1983 "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (plurality opinion).  Rather, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Struthers asserts that the City is liable for his false arrest, malicious prosecution, denial of the fair right to trial, excessive force, and unlawful search claims because the actions of defendant officers were "pursuant to the customs, policies, usages, practices, procedures, and rules of the City . . . and its police department."  Am. Compl. ¶¶ 96-112.  Defendants claim that summary judgment denying this claim based on the false arrest, malicious prosecution, and denial of the fair right to trial claims is appropriate because Struthers has failed to demonstrate an underlying constitutional violation.  Defs.' Mem. in Support Mot. Summ. J. 15.  They further assert that summary judgment denying this claim based on the excessive force and unlawful

34

search claims is appropriate because Struthers has failed to adduce any evidence suggesting these actions were pursuant to any policy or custom of the City.  *Id.*

I deem Struthers's claim against the City abandoned.  Struthers fails to address defendants' argument for summary judgment on this claim in his opposition brief.  *See DeNigris v. New York City Health and Hospitals Corp.*, 861 F. Supp. 2d 185, 196 (S.D.N.Y. 2012) (claim against municipality abandoned where plaintiff did not oppose defendant's motion with regard to municipal liability under § 1983).  Even if Struthers had not abandoned his claim, it would fail on the merits because he has adduced no evidence suggesting that defendant officers acted pursuant to a municipal policy or custom.  Accordingly, defendants' motion for summary judgment is granted with respect to all of Struthers's federal claims against the City.

CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part.  Defendants' motion is granted as to Struthers's claim of municipal liability.  Defendants' motion is denied as to Struthers's federal and state claims for false arrest, malicious prosecution (as to Morales) and unlawful search (as to the search immediately following Struthers's arrest).  It is further denied as to Struthers's federal claims for denial of the right to fair trial (as to Morales), excessive force (as to the first purported use), and failure to intervene, and as to Struthers's state claims for assault, battery and negligence.[25]


So ordered.


John Gleeson, U.S.D.J.


Dated: May 31, 2013
       Brooklyn, New York

---

[25]    The pendent state law claims against all defendants are sufficiently related to the remaining § 1983 claims for this Court to continue to exercise supplemental jurisdiction over them.